246 P.3d 508 (2011)
240 Or. App. 362
EL RIO NILO, LLC; and Amerimex, LLC, dba El Rio Nilo, Petitioners,
v.
OREGON LIQUOR CONTROL COMMISSION, Respondent.
A140227.
Court of Appeals of Oregon.
Submitted February 22, 2010.
Decided January 12, 2011.
*509 Eric L. Dahlin, Michael O. Stephenson, and Davis Wright Tremaine LLP filed the briefs for petitioners.
John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Samuel A. Kubernick, Assistant Attorney General, filed the brief for respondent.
Before WOLLHEIM, Presiding Judge, and SERCOMBE, Judge, and ROSENBLUM, Judge.
SERCOMBE, J.
Petitioner operated a night club and bar in Salem.[1] Petitioner seeks judicial review of a final order of the Oregon Liquor Control Commission cancelling its liquor license for a violation of ORS 471.315(1)(c). The commission entered a default judgment after petitioner failed to request a hearing within the time allowed by a commission rule, i.e., within 20 days of the commission's mailing of the notice of proposed cancellation. On review, petitioner raises several assignments of error challenging the adequacy of the notice and the commission's denial of petitioner's late hearing request. We conclude that the notice was sufficient and the commission did not abuse its discretion in denying petitioner's late hearing request. We, therefore, affirm.
On April 9, 2008, the commission mailed petitioner's managing member, Mark Fredrickson, a notice of proposed license cancellation by certified mail. The notice alleged that there was "a history of serious and persistent problems involving disturbances, unlawful activities, or noise either in [petitioner's] premises or involving patrons of the establishment in the immediate vicinity of the premises," which constituted grounds for cancelling petitioner's liquor license under ORS 471.315(1)(c). The notice provided that petitioner must return a hearing request form by April 29, 200820 days from the date of mailingor a default order cancelling its license would be entered.
*510 Petitioner failed to request a hearing by the April 29 deadline. In fact, Fredrickson did not pick up the certified letter from the post office until April 30. He alleged in an affidavit that he called the commission immediately on retrieving the notice on April 30 but was told "there was nothing [he] could do." Nonetheless, the next day, May 1, he hand delivered the hearing request form to the commission.
On May 8, petitioner submitted a late hearing request pursuant to OAR XXX-XXX-XXXX(1)(a), asserting that "the cause for failure to timely request the hearing was beyond [petitioner's] reasonable control."[2] Specifically, petitioner alleged that Fredrickson did not receive a postal notice indicating that he needed to pick up certified mail from the post office until April 25 and that, when he did receive the postal notice, it indicated that he had until April 30 to retrieve the mail. Thus, petitioner contended that, because Fredrickson did not know the nature of the certified mail and because the postal notice allowed for pickup on April 30, his failure to respond by April 29 was beyond his reasonable control.
In response to petitioner's late hearing request, the commission issued an order denying relief from default. In that order, the commission found that an initial postal notice was delivered to Fredrickson on April 10,[3] directing him to claim the certified mail, and that a second postal notice was delivered on April 17, advising him that the mail must be retrieved by April 30. Additionally, the commission found that Fredrickson attempted to retrieve the mail on April 28, although the post office had already closed, and subsequently did claim the mail on April 30. In light of its findings, the commission concluded that Fredrickson had ample time to claim, read, and respond to the commission's notice of proposed license cancellation and that his failure to act more promptly was not beyond his reasonable control. Consequently, it denied petitioner's late hearing request.
On June 20, 2008, the commission entered its final order by default, cancelling petitioner's liquor license because of a "history of serious and persistent problems" under ORS 471.315(1)(c).[4] On June 23, 2008, petitioner filed a petition for reconsideration, which set forth the arguments now raised on review. The commission, in a subsequent order, rejected each of those arguments and denied the petition for reconsideration. Petitioner timely sought judicial review of the commission's order.
On review, petitioner first contends that the commission erroneously measured the hearing request period from the date that the notice of proposed license cancellation was mailed, rather than the date petitioner actually received the notice. A commission rule, OAR XXX-XXX-XXXX(1)(a), sets out the time within which a licensee may request a hearing after notice of a proposed license cancellation is given. The rule provides, in relevant part, that a request for hearing must be in writing and filed within "30 days after mailing of the charging document for violation matters, except that for violations of ORS 471.315(1)(c), the time limit shall be 20 days." Petitioner failed to request a hearing within 20 days of the time that the notice was mailed.
*511 Nonetheless, petitioner contends that the rule is inconsistent with ORS 471.331(1), which grants a liquor licensee "20 days from notification" to make a hearing request. Petitioner contends that "notification" under the statute means "actual receipt of notice," that it did request a hearing within that time period, and that the commission rule establishing a different timeline is invalid. We conclude that the commission's interpretation of ORS 471.331, as embodied in OAR XXX-XXX-XXXX, is consistent with legislative intent and is therefore valid.
We determine the legislature's intent in enacting the term "20 days from notification" in ORS 471.331 by examining the statute's text, context, and, where appropriate, legislative history. State v. Gaines, 346 Or. 160, 171-72, 206 P.3d 1042 (2009); PGE v. Bureau of Labor and Industries, 317 Or. 606, 610-11, 859 P.2d 1143 (1993). Although an agency's interpretation of a statute may be accorded deference depending on the nature of the terms involved, an inexact term is reviewed as a matter of law. Edwards v. Riverdale School District, 220 Or. App. 509, 513, 188 P.3d 317 (2008), rev. dismissed, 346 Or. 66, 204 P.3d 96 (2009). Here, the term "notification" is an inexact term. See Springfield Education Assn. v. School Dist., 290 Or. 217, 221-30, 621 P.2d 547 (1980) (explaining taxonomy of statutory terms).
ORS 471.331(1) provides:
"Whenever the Oregon Liquor Control Commission proposes to * * * cancel any license issued under this chapter because of adverse neighborhood impact of the licensee's operation, notwithstanding ORS 183.435, the commission shall grant the affected licensee 20 days from notification of the proposed commission action to request a hearing."
As an initial matter, we must determine whether the statute is applicable to the present case, i.e., whether the commission proposed to cancel petitioner's license "because of adverse neighborhood impact of the licensee's operation."
In the notice of proposed cancellation, the commission alleged that petitioner had violated ORS 471.315(1)(c). That statute provides, in part, that the commission may cancel a license where it has reasonable grounds to believe that "there is a history of serious and persistent problems involving disturbances, lewd or unlawful activities or noise either in the premises or involving patrons of the establishment in the immediate vicinity of the premises," and those problems are related to the exercise of the license privilege. It then enumerates several (nonexclusive) examples of behavior giving rise to cancellation, such as excessive noise, public drunkenness, fights, litter, trespassing on private property, and public urination.
Although that provision does not employ the words "adverse neighborhood impact," it plainly does implicate conduct that has such an impact. Moreover, ORS 471.315(1)(c) is the only provision addressing behavior that could conceivably fall under the rubric of "adverse neighborhood impact." Other grounds for cancellation deal instead with the internal conditions of the licensed establishment or the actions of the licensee. See ORS 471.315(1) (grounds for cancellation include false representations by the licensee, unsanitary conditions in the establishment, insolvency, drug use, selling to minors, and the criminal record of the licensee). Therefore, the notice provision in ORS 471.331(1) is applicable to the present case.
The remaining, and more difficult, question is what the term "notification" means. It is not defined by statute, and, therefore, we give the word its plain, natural, and ordinary meaning. PGE, 317 Or. at 611, 859 P.2d 1143. "Notification" is defined as "the act or an instance of notifying," "the act of giving official notice or information," or "a written or printed matter that gives notice." Webster's Third New Int'l Dictionary 1545 (unabridged ed. 2002). The giving of notice entails a transfer of information that could plausibly refer to either the point at which the communication is put into motion (completing the act of the giving party) or the point at which the communication is received (when the recipient actually acquires the information). Thus, the definition is simply not dispositive of the question before us. As the Supreme Court has noted, "a common *512 meaning of `notified' is being given knowledge; however, we conclude that it is reasonable to interpret it also to mean when a notice is sent by mail, a procedure which is presumed to bring knowledge to the addressee of the notice." Norton v. Compensation Department, 252 Or. 75, 78, 448 P.2d 382 (1968).
The decision in Norton reconciled two potentially conflicting statutes that governed workers' compensation claims, one which allowed a claimant to request a hearing "within 60 days after the mailing of the notice of denial" while the other allowed a claimant to make a request "within 60 days after the claimant was notified of the denial." Id. at 76-77, 448 P.2d 382 (internal quotation marks omitted; emphasis added). The court harmonized the two provisions, concluding that "notified" meant the act of "mailing." We have no similar need to reconcile two statutes in the present case. Nonetheless, as observed by the Norton court, the term "notification" is ambiguous. Notification can connote both the sending of information as well as the receipt of information.
The statutory context offers very little guidance. ORS 471.331(1) is the only statutory notice provision for license cancellations in the Liquor Control Act. That suggests the legislature regarded "adverse neighborhood impact" as an exceptional ground for cancellation, warranting greater urgency in enforcement. See ORS 471.331(2) (no stay of enforcement where license was cancelled based on adverse neighborhood impact). It would be curious, then, if the legislature intended the hearing request period to run from the date a notice was received, which would effectively allow a licensee to delay the final resolution of the license cancellation by failingconsciously or otherwiseto retrieve mail. The legislature presumably intended the commission to dispose of such cases with greater dispatch than actual receipt might afford.
Related statutes within the Liquor Control Act prove similarly unhelpful, and there is no pertinent legislative history concerning the meaning of "notification" in ORS 471.331(1). Ultimately, the meaning most likely intended by the legislature is revealed by the purposes of the statute. See Springfield Education Assn., 290 Or. at 228, 621 P.2d 547 ("The issue of law on review is whether the agency interpretation coincides with the legislative policy which inheres in the meaning of the statute."). As suggested by the statutory context, the purpose of the notice provision is to balance the opportunity to request a hearing against the need for administrative efficiency in finally resolving contested cases. "[W]hen notices are sent by mail, and not personally served, the date of mailing is more accurately ascertainable and more susceptible of accurate proof than the date on which the notice was received." Norton, 252 Or. at 78-79, 448 P.2d 382. Using the date of mailing more reasonably effectuates the legislative policy and is consistent with both the text and context of the statute. We conclude that the term "notification," as used in ORS 471.331(1), is most likely intended to refer to the date of mailing. The commission's rule is consistent with that statute. Therefore, it properly used the date of mailing in calculating petitioner's hearing request period.
Petitioner also contends that the commission abused its discretion in denying the late hearing request. Under OAR XXX-XXX-XXXX, an agency may accept a late hearing request if the "cause for failure to timely request the hearing was beyond the reasonable control of the party." Petitioner argues that, because the postal notice allowed for pickup of the certified mail until April 30, Fredrickson acted reasonably in picking up the mail on that date. However, the question is not whether Fredrickson acted reasonably, but whether the cause for his failure to timely request a hearing was beyond his reasonable control.
The commission found that the first postal notice was delivered on April 10. Even if we were to accept petitioner's version of events, the postal notice was delivered at the latest on April 17 (although petitioner asserts that Fredrickson first saw the postal notice only on April 25). Fredrickson did not attempt to retrieve the certified mail until April 28, and he made no attempt on April 29. Fredrickson ultimately did retrieve the certified mail on April 30.
*513 The cause for petitioner's failure to request a hearing within the prescribed time period was Fredrickson's own delay. By his own admission in an affidavit, "[he] should have picked up [his] certified letter earlier than the last day [he] was told to do so by the Post Office." Assuming that he first saw the postal notice on April 25, he still had several days in which to pick up the mail before the hearing request period expired at the end of the day on April 29. Yet, he chose not to pick up the certified mail until April 30. It was that choice that caused the delay in requesting a hearing, rather than some intervening event beyond petitioner's control. That the postal notice required pick up by April 30 did not dictate that Fredrickson wait until that date to retrieve the mail. It was well within the commission's discretion to conclude that the cause of petitioner's failure to timely request a hearing was within Fredrickson's reasonable control. Thus, the commission did not err in denying petitioner's late hearing request.
Petitioner's remaining assignments of error lack merit and we reject them without further discussion.
Affirmed.
NOTES
[1] Petitioner Amerimex, LLC, is the managing member of petitioner El Rio Nilo, LLC. For ease of reference, we refer to the licensed entity as "petitioner."
[2] OAR XXX-XXX-XXXX(1)(a) is part of the Attorney General's Model Rules of Procedure authorized under ORS 183.341 and adopted by the commission pursuant to OAR XXX-XXX-XXXX. As pertinent, OAR XXX-XXX-XXXX provides, in part:

"(1)(a) When a party requests a hearing after the time specified by the agency, the agency may accept the late request only if:
"(A) The cause for failure to timely request the hearing was beyond the reasonable control of the party, unless other applicable statutes or agency rules provide a different standard; and
"(B) The agency receives the request before the entry of a final order by default or before 60 calendar days after the entry of the final order by default, unless other applicable statutes or agency rules provide a different timeframe."
[3] On review, petitioner argues that there is not substantial evidence in the record to support that finding. The record contains ample evidence that the postal notice was first delivered on April 10, thus we do not address that contention any further. Petitioner does not dispute that the notice of proposed license cancellation was mailed on April 9 or that delivery of another postal notice occurred on April 17.
[4] It is unnecessary to recount the underlying factual findings of that order, given that they are not the subject of this appeal.