Argued and submitted July 26, 2022, affirmed April 19, 2023

JGB ENTERPRISES, LLC,
dba Twisted River Saloon,
*Petitioner,*

*v.*

OREGON LIQUOR AND
CANNABIS COMMISSION,
*Respondent.*

Oregon Liquor Control Commission
A176066

529 P3d 262

The Oregon Liquor and Cannabis Commission (OLCC) issued a notice of proposed suspension of licensee's liquor license, based on licensee's violation of two OLCC rules, OAR 845-006-0345(15) and (16). Those rules prohibit a licensee from engaging in certain liquor-related activities that violate, respectively, an order issued by the Governor or certain public health laws created pursuant to an order of the Governor during a state of emergency. Licensee made a late hearing request, which OLCC denied for failure to establish good cause. OLCC then issued a final order by default suspending licensee's license for violating OAR 845-006-0345(15) by violating Executive Order (EO) 20-66, which imposed restrictions on eating and drinking establishments during the COVID-19 state of emergency, and for violating OAR 845-006-0345(16) by violating Oregon Health Authority guidance created under EO 20-66. On judicial review, licensee challenges both OLCC's denial of its late hearing request and OLCC's final order by default. As to the default order, licensee argues that ORS 471.333(3) limits OLCC's authority to suspend a license for maintaining an insanitary establishment in violation of public health laws, that OLCC effectively suspended licensee's license on that basis, and that OLCC failed to comply with ORS 471.333(3) and therefore failed to make a *prima facie* case for suspension as required by ORS 183.417(4). *Held*: Regarding the late hearing request, OLCC did not abuse its discretion in denying the request, nor was it required to hold a "good cause" hearing under OAR 137-003-0528(3) in these circumstances. Regarding the default order, the Court of Appeals recognized that the preservation issue was complex. Assuming without deciding that it could reach the merits, the court rejected licensee's arguments and concluded that, because OLCC suspended licensee's license for violating OLCC's own rules, not for maintaining an insanitary establishment, ORS 471.333(3) did not apply.

Affirmed.

Joseph O. Huddleston argued the cause for petitioner. Also on the briefs were Kevin L. Mannix and Kevin L. Mannix, P.C.

Colm Moore, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, and Egan, Judge, and Jacquot, Judge.*

AOYAGI, P. J.

Affirmed.

_____

  * Jacquot, J., *vice* James, J. pro tempore.

**AOYAGI, P. J.**

JGB Enterprises, LLC, doing business as Twisted River Saloon (licensee) holds a liquor license issued by the Oregon Liquor and Cannabis Commission (OLCC). In March 2021, OLCC issued a notice of proposed suspension of that license, based on licensee having violated two OLCC rules, OAR 845-006-0345(15) and (16). Those rules prohibit a licensee from engaging in certain liquor-related activities that, respectively, violate an order issued by the Governor, or violate certain public health laws created pursuant to an order of the Governor during a state of emergency. In this case, licensee was alleged to have violated OAR 845-006-0345(15) by violating Executive Order (EO) 20-66, which imposed restrictions on eating and drinking establishments during the COVID-19 state of emergency, and to have violated OAR 845-006-0345(16) by violating Oregon Health Authority (OHA) guidance created under EO 20-66.

Licensee made a late request for a hearing on the proposed suspension. OLCC denied that request, concluding that good cause had not been established. OLCC then issued a final order by default in which it suspended licensee's license for 38 days for violating OAR 845-006-0345(15) and (16). On judicial review, licensee raises two assignments of error. First, licensee challenges OLCC's denial of its late request for a hearing on the proposed suspension. Second, licensee argues that, in its final order by default, OLCC failed "to comply with ORS 471.333(3) to establish a *prima facie* case under ORS 183.417(4)." We affirm.

## I.   BACKGROUND

We begin by describing the larger context in which this case arose. We then address the specific facts of this case, which are taken from OLCC's findings and undisputed evidence in the record that is consistent with those findings. *Campbell v. Employment Dept.*, 245 Or App 573, 575, 263 P3d 1122 (2011).

In March 2020, in response to the COVID-19 pandemic, the Governor declared a state of emergency under ORS 401.165. The Governor has broad authority during a state of emergency, including the right to exercise "all police

powers vested in the state by the Oregon Constitution" to effectuate the purposes of ORS chapter 401. ORS 401.168(1). The Governor also has the "power to enact reasonable regulations for the protection of 'the public health and the public safety.'" *Elkhorn Baptist Church v. Brown*, 366 Or 506, 524-25, 466 P3d 30 (2020) (quoting *Jacobson v. Massachusetts*, 197 US 11, 25, 25 S Ct 358, 49 L Ed 643 (1905)). And the Governor may implement any action authorized by ORS 433.441 to 433.452. *Id.* at 526-27. That includes closing facilities, regulating goods and services, and controlling or limiting "entry into, exit from, movement within and the occupancy of premises in any public area subject to or threatened by a public health emergency," as reasonably necessary to respond to the emergency. ORS 433.441(3).

The Governor issued various executive orders in connection with the COVID-19 state of emergency. This case concerns EO 20-66, issued on December 2, 2020. As relevant here, EO 20-66 ordered OHA to issue binding guidance on safety measures, operational limitations, and capacity limits for eating and drinking establishments—with more restrictive measures applying in counties with higher COVID-19 transmission rates—which became part of EO 20-66. EO 20-66(10)(c) also directed "other state agencies with regulatory enforcement authority, including but not limited to *** [OLCC], to continue their efforts to protect the lives and health of Oregonians, under existing civil and administrative authorities, the directives in [EO 20-66], the Risk Level Metrics, and any guidance issued by OHA or other state agencies to implement [EO 20-66]." OLCC subsequently promulgated two administrative rules. OAR 845-006-0345(15) prohibits licensees from engaging in activities relating to alcohol that violate an order issued by the Governor. OAR 845-006-0345(16) prohibits licensees from engaging in activities relating to alcohol that violate certain public health laws created pursuant to an order issued by the Governor during a state of emergency.

Licensee holds a "Full On-Premises Sale" liquor license for an eating and drinking establishment in Lane County. On February 23, 2021, OLCC issued an order of immediate suspension of that license "because continued

operation of your premises represents a serious danger to public health and safety." OLCC alleged that from January 4, 2021, to February 20, 2021, while Lane County was designated "Extreme Risk," licensee had violated EO 20-66, and thus violated OAR 845-006-0345(15), by allowing indoor on-premises consumption of food and/or drink, not enforcing mask requirements, not enforcing six-foot distancing requirements, and/or not placing plexiglass shields between patrons and bar staff. OLCC alleged that licensee had also violated OHA guidance created pursuant to EO 20-66 that qualified as public health laws, and thus violated OAR 845-006-0345(16), by the same conduct. OLCC ordered licensee to immediately stop selling and serving alcoholic beverages for onsite consumption. The order advised licensee of its hearing rights, including the deadline by which to request a hearing "to dispute the Immediate License Suspension."

Meanwhile, on the same day, February 23, 2021, the Governor modified Oregon's county risk-level guidance, which resulted in Lane County's COVID-19 risk level dropping to "High Risk." Under a "High Risk" designation, indoor dining is permitted, subject to OHA guidance. Indoor dining would be allowed in Lane County beginning on February 26, 2021, because of the risk-level designation change.

On February 24, 2021, licensee's counsel Mannix sent a letter to OLCC, requesting reconsideration of the order of immediate suspension.[1] Licensee argued that, given the risk-level change, licensee would be allowed to have indoor dining in a matter of days, at which point the threats of harm cited in OLCC's order would "no longer exist." Licensee did not contest that it had allowed indoor dining, but otherwise denied OLCC's allegations, asserting that it was compliant with all other COVID-19 restrictions and intended to maintain compliance. Citing the irreparable harm that immediate suspension would cause, licensee's counsel stated, "I request a substantive response to this letter no later than February 25, 2021, at 5:00 p.m. If I do not receive a response, I will be requesting a hearing with the OLCC and requesting an administrative stay of [OLCC's]

---

[1] Licensee also requested a stay. None of licensee's stay requests are at issue on appeal, so we do not discuss any stay arguments or stay rulings.

enforcement action." The letter ended with a statement of intent to file a lawsuit against OLCC.

On February 25, 2021, Case Presenter Schein of OLCC's Administrative Hearings Division sent an email to Huddleston, a lawyer in Mannix's office, confirming the substance of a recent telephone conversation. Schein confirmed that, in light of the county's move to "High Risk" and licensee's "efforts at compliance with masks and social distancing requirements," OLCC intended to issue an order the next day ending licensee's immediate suspension. Finally, Schein reiterated that licensee would still be subject to being found in violation and that OLCC was likely to send a violation notice in the next few weeks:

> "As mentioned, withdrawal of the immediate suspension is not instead of a violation. It is likely that your client will receive such a notice in the next few weeks. However, such notices are not immediate suspensions and will give your client, yourself, and [OLCC] time to work out a resolution or to go to hearing prior to any further suspension time being served."

On February 26, 2021, Schein sent an email to Mannix and Huddleston, attaching OLCC's formal order rescinding the order of immediate suspension.

Two weeks later, on March 9, 2021, OLCC issued a notice of proposed license suspension. It served the notice on licensee, licensee's registered agent, and Mannix as licensee's attorney. Mannix was served by both regular mail and email. OLCC alleged that from January 4, 2021, to February 20, 2021, while Lane County was designated "Extreme Risk," licensee had violated EO 20-66, and thus violated OAR 845-006-0345(15), by allowing indoor on-premises consumption of food and/or drink, exceeding maximum capacity, not enforcing mask requirements for entertainers, and not placing plexiglass shields between patrons and bar staff. OLCC alleged that licensee had also violated OHA guidance created pursuant to EO 20-66 that qualified as public health laws, and thus violated OAR 845-006-0345(16), by the same conduct.

The notice advised licensee of its hearing rights, including the deadline to request a hearing "to dispute the

charge or the proposed license suspension." The notice stated that, if licensee wanted a hearing, it needed to sign and date the enclosed "Request for Hearing" form and return it "by 5:00 PM on April 8, 2021." (Underscoring in original.) The notice specified that, to be timely, the hearing request had to be "postmarked on or before that date, if mailed, or received by that exact time and date, if delivered in person or by fax." The notice explained that if licensee did not request a hearing by the deadline, it "will have waived the right to a contested case hearing," and an order of default would issue. Enclosed with the notice was a "Request for Hearing" form, which included a box to check to "request a hearing regarding the Commission's Notice of Proposed License Suspension, Civil Penalty, Cancellation or Letter of Reprimand dated March 9, 2021." The form reiterated, "In order to obtain a hearing, this form must be RECEIVED at the address or fax number below by 5:00 p.m. on April 8, 2021. In order for your request to be timely, it must be post-marked on or before that date, if mailed, or received by that exact date and time, if delivered in person or by fax." (Underscoring in original.)

On April 20, 2021, Schein sent an email to Mannix regarding licensee, stating, "I recall that you represented this licensee in connection with the Immediate Suspension that we withdrew. However, we issued a charge letter in this matter, and our records do not reflect receipt of a timely hearing request. Please advise."

On April 22, 2021, Mannix faxed a completed copy of the "Request for Hearing" form to OLCC. He also faxed a letter, identifying himself as licensee's attorney ("[a]s you are aware") and "re-requesting" a hearing. Mannix asserted that OLCC's order of immediate suspension of February 23, 2021, which was rescinded on February 26, 2021, and OLCC's notice of proposed suspension of March 9, 2021, involved "the exact same issues and legal bases"; that they differed only in when they were issued relative to the lifting of the prohibition on indoor dining; and that he had made an "assumption" that his February 24 letter "would act as a hearing request." Mannix took the position that licensee "has already requested a hearing." He also cited OAR 137-003-0675(1), which allows a party 60 days to request

reconsideration of a final order in a contested case, stating that "we believed that either the February 25 recission or March 9 notice was a reconsideration order that started the 60-day clock over again. In effect, we are requesting reconsideration of the reconsideration, not a new hearing."

Mannix summarized the "three factors" that he believed justified allowing a hearing: (1) his "legal challenge" had not substantially changed since February 24, 2021; (2) licensee had already requested a hearing; and (3) licensee was in the "reconsideration" phase and "now subject to a 60-day window." He added that it was "beyond the reasonable control" of licensee that OLCC "did not deem the February 24 letter a hearing request" and that it was "impossible to view this as two separate proceedings."

Finally, Mannix argued that HB 4212 (2020) extended the time limitations "for the commencement of a civil cause of action or the giving of notice of a civil claim established by statute" during the COVID-19 state of emergency. *See* Or Laws 2020, ch 12, § 7 (1st Spec Sess). Citing the broad definitions of "civil action" and "claim" in *Black's Law Dictionary*, Mannix asserted that "a quasi-judicial process meets this definition," and therefore "HB 4212 suspended the time limitations for this type of action until 90 days after the Governor's COVID-19 Executive Orders expire," such that "HB 4212 also justifies this late hearing request."

Mannix concluded the letter by stating that it was "well within the discretion of the OLCC" to grant the late hearing request.

On May 6, 2021, OLCC issued an order denying relief. OLCC made factual findings regarding the procedural history of the case, including describing the correspondence between OLCC and licensee, then stated its conclusions of law. OLCC recognized that OAR 137-003-0528(1)(b) allows it to accept a late hearing request if there is "good cause for the failure to timely request the hearing"[2] and that OAR 137-003-0501(7) defines "good cause" as existing "when an

---

[2] OAR 137-003-0528(1)(b)(B) limits the time in which to make a late hearing request, but that time limitation was met and is not at issue, so we do not discuss it.

action, delay, or failure to act arises from an excusable mistake, surprise, excusable neglect, reasonable reliance on the statement of a party or agency relating to procedural requirements, or from fraud, misrepresentation, or other misconduct of a party or agency participating in the proceeding." OLCC concluded that licensee had not shown good cause.

OLCC explained that, under OAR 845-003-0270 (1)(b), licensee had 30 days to request a hearing. It described the information in the March 9 notice, particularly regarding the need to request a hearing, the deadline to do so, and the consequences of not doing so. OLCC concluded that licensee's argument that the February 24 letter acted as a hearing request was "not well-taken," as the letter did not contain a hearing request. The letter's only mention of a hearing at all was a conditional statement by Mannix that he would be requesting a hearing in the future ("will be requesting") if OLCC did not respond by the next day—which OLCC did, such that the condition was never met. OLCC further reasoned that, as of February 24, a notice of proposed suspension had not yet been issued, so "there was no matter for which a hearing could be requested."

OLCC concluded that there was no evidence that licensee's failure to timely request a hearing was the result of reasonable reliance on the statement of a party or agency relating to procedural requirements, surprise, or excusable neglect; nor was there fraud, misrepresentation, or other misconduct of a party or agency participating in the proceeding. OLCC rejected licensee's argument regarding HB 4212, concluding that HB 4212 did not apply and that deadlines in administrative hearings are governed by ORS chapter 183 and OAR chapter 137. Ultimately, OLCC concluded that licensee had not shown good cause for its late hearing request and, on that basis, denied the request.

On May 10, 2021, Mannix faxed a letter to OLCC, stating licensee's intent to seek judicial review of the denial of its late hearing request, and preemptively seeking reconsideration of the anticipated final order by default. The letter focused almost entirely on a new argument that, under ORS 471.333(1) and ORS 471.732, OLCC cannot suspend a liquor license based on a licensee's violation of OHA guidance until

and unless OHA issues a final order concluding that the licensee has violated OHA guidance. That argument was couched in terms of ORS 183.417(4), which requires OLCC to make a *prima facie* case for any violation found in a final order by default.

On May 17, 2021, OLCC issued a final order by default suspending licensee's license for 38 days, based on two independent violations. The first was that licensee violated EO 20-66, and thus violated OAR 845-006-0345(15), by allowing indoor consumption of food and/or drink and not enforcing mask requirements for entertainers from January 4, 2021 to February 20, 2021. The second was that licensee violated OHA guidance created pursuant to EO 20-66, and thus violated OAR 845-006-0345(16), by the same conduct. As to both violations, the other portions of the charges—regarding exceeding maximum capacity and not placing plexiglass shields between patrons and bar staff—were deemed "not established."

On May 18, 2021, licensee requested reconsideration of the final order by default, reiterating its argument based on ORS 471.333(1) and ORS 471.732. OLCC denied reconsideration on May 21, 2021. OLCC stated that it was "not convinced" that licensee could raise such an issue in a request for reconsideration, where no hearing had taken place, but nevertheless considered and rejected the argument on the merits.

Licensee seeks judicial review under ORS 183.482.

## II.   DENIAL OF UNTIMELY HEARING REQUEST

Licensee's first assignment of error is directed to OLCC's order of May 6, 2021, denying licensee's late request for a hearing on OLCC's proposed suspension of licensee's liquor license. Licensee argues that OLCC abused its discretion by denying the late hearing request. *See El Rio Nilo, LLC v. OLCC*, 240 Or App 362, 369-70, 246 P3d 508 (2011) (reviewing OLCC's decision to deny a late hearing request under OAR 137-003-0528 for abuse of discretion).[3]

---

[3] To the extent that licensee suggests that other standards of review might apply in addition to abuse of discretion, we conclude that abuse of discretion is the correct standard.

Alternatively, licensee argues that OLCC at least needed to hold a "good cause" hearing before denying the request.

Under OAR 845-003-0270(1)(b) and OAR 845-003-0220(2)(b), a party may contest a proposed OLCC sanction by requesting a hearing within 30 days after service of notice of the proposed sanction. OLCC may grant a late request for a hearing only if the requesting party shows that "[t]here was good cause for the failure to timely request the hearing." OAR 137-003-0528(1)(b)(A). If the requesting party relies on facts to explain why its request was late, and OLCC or another party disputes those facts, then the requesting party is entitled to a "good cause" hearing before OLCC rules. OAR 137-003-0528(3) ("If the agency or another party disputes the facts contained in the explanation of why the request for hearing is late, the agency will provide a right to a hearing on the reasons why the hearing request is late. The administrative law judge will issue a proposed order recommending that the agency grant or deny the late hearing request.").

Licensee makes four distinct arguments regarding the denial of its late hearing request. First, licensee argues that OLCC abused its discretion by denying the request, because licensee established good cause for being late. Second, licensee argues that its hearing request was not actually late because the 60-day reconsideration window in OAR 137-003-0675(1) applied. Third, licensee argues that its hearing request was not late because HB 4212 extended the deadline for requesting a hearing until 90 days after the end of the COVID-19 state of emergency. Fourth, licensee argues that, at a minimum, OLCC was required to hold a "good cause" hearing before denying the request, because there were disputed factual issues.

A.   *"Good Cause" Determination*

OLCC determined that licensee had not established good cause for its hearing request being late and, on that basis, denied the request. On review, licensee argues that it established good cause under the applicable standard, such that it was an abuse of discretion to deny the late hearing request. In response, OLCC contends that licensee's

argument is unpreserved and, in any event, fails on the merits.

"Generally, we will not consider an argument on appeal that has not been raised in the trial court." *State v. Walsh*, 288 Or App 278, 282, 406 P3d 123 (2017), *rev den*, 362 Or 545, *cert den*, ___ US ___, 139 S Ct 158 (2018); *see* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court."). The same preservation principles apply to judicial review of agency decisions. *Wahlgren v. DMV*, 196 Or App 452, 457, 102 P3d 761 (2004).

In this case, the predominant theme of licensee's letter to OLCC in support of its late hearing request was that the request was *not* late, either because licensee had already made a timely request or because the deadline had not really passed. Licensee never mentioned "good cause," although it indirectly invoked an older version of the rule on late hearing requests that was no longer in effect. *See* OAR 137-003-0528(1)(a)(A) (2011) (providing that an agency may accept a late hearing request only if the cause for failing to timely request a hearing was "beyond the reasonable control of the party"). Licensee also did not mention the definition of "good cause" in OAR 137-003-0501(7) or tie its arguments to it. Nonetheless, OLCC ruled on good cause, concluding that it had not been established. In context, it appears that OLCC may have understood that, even though licensee did not admit to any neglect, it was at least implicitly arguing that any neglect was excusable, based on the February 24 letter.

Under the circumstances, if licensee was contending that it established excusable neglect, based on the February 24 letter, and thus good cause, we would consider that issue adequately preserved for review. But that is not licensee's argument.[4] Instead, licensee cites various

---

[4] In its opening brief, licensee briefly suggests that OLCC should have treated the February 24 letter as an "early hearing request," citing *Duffour. See Duffour v. Portland Community College*, 283 Or App 680, 687-88, 389 P3d 1162 (2017) (holding that a workers' compensation claimant had adequately raised the issue of attorney fees and a certain penalty, where he filed a premature hearing request that raised those issues, then filed a timely hearing request that did not re-raise them but requested consolidation, and the board consolidated the

"circumstances" that, in its view, add up to good cause: that OLCC "knew" that licensee disputed OLCC's authority; that it was obvious from the correspondence that licensee "had every intent to request a hearing"; that the March 9 notice was served on Mannix but not Huddleston; that OLCC was "not blindsided" by the late request; that OLCC knew that licensee was represented by counsel; that OLCC "inexplicably viewed one proceeding as two separate proceedings"; and that OLCC's proceedings were "unfair" for the reasons laid out in the April 22 letter.

*That* argument is unpreserved—both its parts and its whole. We disagree with licensee that the "abuse of discretion" standard of review means that we must consider "the proceedings in total," including any circumstances discernible from the record, regardless of whether they were cited in licensee's late hearing request. Relatedly, we disagree that OLCC was required to consider any circumstances of which OLCC was "aware," regardless of whether licensee cited them in its late hearing request. That is not how the standard of review applies. *See, e.g.*, *El Rio Nilo, LLC*, 240 Or App at 370 (considering only circumstances argued by the licensee or considered by OLCC in concluding that OLCC did not abuse its direction by denying a late hearing request).

In addition to being unpreserved, the "good cause" argument that licensee makes on judicial review fails on the merits. As OLCC points out, licensee's argument is untethered to the definition of "good cause" in OAR 137-003-0501(7), which required licensee to establish that its failure to timely request a hearing arose "from an excusable mistake, surprise, excusable neglect, reasonable reliance on the statement of a party or agency relating to procedural requirements, or from fraud, misrepresentation, or other misconduct of a party or agency participating in the proceeding."

_____

two requests). We reject that argument, to the extent that licensee is making it, both because it is undeveloped and because we agree with OLCC that the February 24 letter simply cannot be read as a hearing request, premature or otherwise. Licensee's only hearing request was the late request that it submitted on April 22.

Moreover, OLCC having general knowledge that a party is represented and is likely to oppose OLCC actions does not excuse a party from making hearing requests as required by the applicable rules. The February 23 order of immediate suspension and the March 9 notice of proposed suspension were separate OLCC actions, and licensee could have requested a hearing on neither, one, or both. It is irrelevant whether the two actions might be characterized as part of one "proceeding," because no rule allows a party to make one hearing request for an entire "proceeding"—and, in any event, *no* hearing requests were made in this proceeding (except the late one). Lastly, licensee suggests that, in addition to serving the March 9 notice on Mannix as licensee's attorney, OLCC should have also served Huddleston. However, it is undisputed that Mannix represented licensee, as Mannix plainly stated in his letters to OLCC, and there is no record (nor does licensee assert) that anyone ever requested that Huddleston be treated as a second attorney of record or that he be copied on OLCC communications. Mannix himself did not copy Huddleston on his communications with OLCC regarding licensee.

Accordingly, we reject licensee's argument that it established good cause, as relevant to whether OLCC abused its discretion in denying the late hearing request.

B.  *"Reconsideration Window" Argument*

Licensee next argues that its hearing request was not actually late because licensee was within the "'reconsideration' window" of OAR 137-003-0675(1), which allows a party 60 days to request reconsideration of a final order in a contested case.

According to licensee, OLCC issued an order of immediate suspension on February 23; reconsidered that order when it issued a rescission order on February 26; and then "reconsidered its withdrawal of the termination order" when it issued the notice of proposed suspension on March 9. Licensee contends that "everything the OLCC did [after February 26] was a reconsideration of its 'Order Rescinding Immediate License Suspension.'" From that premise, licensee argues that its April 22 hearing request should be understood as a request for a "re-hearing" on the February 26

rescission order (which was a final order), rather than a hearing on the March 9 notice of proposed suspension.

We disagree with licensee's characterization of OLCC's actions. OLCC did not reconsider anything in its March 9 notice. It simply initiated regular proceedings for alleged OLCC rule violations. The March 9 notice was a "charging document" under OAR 845-003-0220(2)(b), *i.e.*, a written notice that OLCC would "seek a sanction" for "a violation or failure to comply with * * * OAR Chapter 845." It notified licensee that OLCC would seek a 38-day suspension of licensee's license for violations of OAR 845-006-0345(15) and (16). As correctly stated in the notice, licensee had 30 days to request a hearing on that notice. *See* OAR 845-003-0270(1)(b) (providing that, as to a charging document defined in OAR 845-003-0220(2)(b), a party has 30 days from service to request a hearing, subject to certain exceptions). OAR 137-003-0675(1) is inapposite.

Moreover, licensee's completed hearing request form of April 22 plainly states that licensee is requesting a hearing on OLCC's "Notice of Proposed License Suspension, Civil Penalty, Cancellation or Letter of Reprimand dated March 9, 2021."

OLCC correctly applied the 30-day deadline to request a hearing in OAR 845-003-0270(1)(b), rather than the 60-day deadline to request reconsideration or rehearing on a final order in OAR 137-003-0675(1).

C. *HB 4212 Argument*

Licensee next argues that HB 4212 extended the deadline to request a contested case hearing in an agency proceeding. Licensee's briefing contains only three sentences of argument on this issue, one of which directs us to licensee's April 22 letter to OLCC. Opening briefs are subject to word limits. ORAP 5.05(1)(b)(ii)(A). For that and other reasons, a party must present its arguments in the opening brief and cannot rely on incorporation by reference. *See Sherwood Park Business Center, LLC v. Taggart*, 261 Or App 609, 626 n 13, 323 P3d 551, *rev den*, 355 Or 879 (2014) (describing it as "inappropriate" for the appellant to "incorporate by reference" a legal argument set forth in a document

in the record, because allowing such incorporation by reference "would effectively permit the brief to circumvent the requirements of the [word-limit] rule"). Even if we were to look to the April 22 letter, however, licensee's arguments are minimally developed and unavailing as presented. *See Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *adh'd to as clarified on recons*, 187 Or App 472, 68 P3d 259 (2003) (regarding undeveloped arguments).

In June 2020, HB 4212 was enacted as one legislative response to the COVID-19 pandemic. Or Laws 2020, ch 12, § 49 (1st Spec Sess). It was intended to ensure that our state court system would continue to be accessible during the pandemic and to protect legal rights and enforce responsibility while also responding appropriately to health and safety needs. Testimony, Joint Committee on the First Special Session of 2020, HB 4212, June 25, 2020 (statement of Eric Foster, Oregon State Bar Board of Governors Public Affairs Committee) (Foster Testimony). As relevant here, section 7 extends the deadline to commence a "civil action" or give notice of a "civil claim established by statute" until 90 days after the COVID-19 state of emergency ends. Or Laws 2020, ch 12, § 7(1), (2). Section 7 was intended to "[t]oll the statute of limitations as necessary during the state of emergency and to address court closures and difficulties filing." Foster Testimony.

Nothing in the text, context, or legislative history appears to support the view that HB 4212 applies to administrative agency proceedings generally, or deadlines to request hearings on proposed sanctions specifically. Licensee's argument that HB 4212 applies is based entirely on the broad definitions of "civil action" and "claim" in *Black's Law Dictionary*. It does not grapple with the text, context, or legislative history of HB 4212. We reject license's argument regarding HB 4212 without further discussion.

D.  *Lack of a "Good Cause" Hearing*

Licensee's last argument regarding the denial of its late hearing request is that, at a minimum, OLCC needed to hold a "good cause" hearing before ruling. In its opening brief,

licensee argues that a "good cause" hearing was required because licensee raised "factual issues" with which OLCC "disagreed," specifically (1) whether the February 24 letter "should have been seen as a hearing request," and (2) whether "the matter was now in the 'reconsideration' window" under OAR 137-003-0675(1).

Under OAR 137-003-0528(3), a party who has made a late hearing request is entitled to a "good cause" hearing before OLCC rules on its request, but only if OLCC or another party disputes facts on which the requesting party is relying to establish good cause. OAR 137-003-0528(3) ("If the agency or another party disputes the facts contained in the explanation of why the request for hearing is late, the agency will provide a right to a hearing on the reasons why the hearing request is late. The administrative law judge will issue a proposed order recommending that the agency grant or deny the late hearing request."). Whether a "good cause" hearing was required under OAR 137-003-0528(3) is a question of law. *Hendrickson Trucking, Inc. v. ODOT*, 270 Or App 633, 634, 349 P3d 585 (2015).

A "good cause" hearing was not required here. The two issues identified by licensee were not "factual issues," or at least licensee has not explained how they were. Whether the February 24 letter "should have been seen as a hearing request" on the March 9 notice is a legal question. The February 24 letter either did or did not qualify as a hearing request. In concluding that it did not, OLCC did not dispute any "facts" that licensee asserted in its late hearing request. Similarly, whether "the matter was now in the 'reconsideration' window" under OAR 137-003-0675(1)—*i.e.*, whether the deadline for licensee's hearing request was governed by OAR 845-003-0270(1)(b) or OAR 137-003-0675(1)—was not a factual issue but a legal one.

In its reply brief, licensee shifts its argument, asserting that it is really arguing that a "good cause" hearing was required because OLCC made factual findings in its May 6 order that licensee disagrees with. We also reject that argument.

Under OAR 137-003-0528(3), the issue is whether OLCC disputed facts on which licensee relied for its late

hearing request, not whether licensee disagrees with facts that OLCC found. Licensee identifies five factual findings in the May 6 order that it "disputes." First, licensee disputes two findings that treat service on Mannix as service on "licensee's attorney," but no "good cause" hearing was required on that issue, because licensee never contested service in its late hearing request. Next, licensee disputes a finding that "Licensee did not request a hearing by the hearing request deadline specified in the Notice," but, as previously discussed, the dispute there goes to OLCC's underlying legal conclusion (that the February 24 letter did not constitute a hearing request), not a factual issue. Finally, licensee disputes two findings that simply quote from licensee's April 22 letter, but licensee does not explain, and we cannot discern, what it disputes about them. In sum, licensee has not identified any factual dispute of the type that would trigger the need for a "good cause" hearing under OAR 137-003-0528(3).

Having addressed each of licensee's four arguments regarding the denial of its late hearing request, we reject licensee's first assignment of error.

### III.   CHALLENGE TO *PRIMA FACIE* CASE

Licensee's second assignment of error is directed to OLCC's final order by default of May 17, 2021, suspending licensee's liquor license. Licensee argues that OLCC failed "to comply with ORS 471.333(3) to establish a prima facie case under ORS 183.417(4)." Licensee first made that argument in its May 10 letter preemptively requesting reconsideration of the anticipated default order, and then made it again in its May 18 request for reconsideration of the actual default order.

Under ORS 183.417(4), "[a]n order adverse to a party may be issued upon default only if a prima facie case is made on the record." To meet that requirement, "[t]he agency must find that the record, including all materials submitted by the party, contains evidence that persuades the agency of the existence of facts necessary to support the order." OAR 137-003-0075(3). In this case, as previously described, OLCC found that the record supported some, but not all, of the allegations in the March 9 notice and only

found violations based on the allegations that it deemed to be supported.

Licensee argues that OLCC erred in concluding that a *prima facie* case was made. In licensee's view, ORS 471.333(3), which limits OLCC's authority to suspend a liquor license for "maintaining an insanitary establishment," applies in any situation in which OLCC is relying on a factual violation of OHA regulations to suspend a license. Licensee argues that ORS 471.333(3) therefore applied here, and OLCC did not comply with it, leading to the failure to make a *prima facie* case.

A.   *Preservation*

We begin with the issue of preservation. The parties take starkly different positions on preservation. Licensee argues that, given the nature of a default order, a party adversely affected by a default order has no practical means to challenge it and, consequently, preservation should be excused. Otherwise, according to licensee, the *prima facie* case requirement in ORS 183.417(4) would be meaningless, as judicial review is necessary to enforce it. Alternatively, licensee argues that it adequately preserved the issue by raising it in its May 10 and May 18 letters seeking reconsideration. Alternatively, licensee argues very briefly in its reply brief that ORS 471.333(3) is a jurisdictional issue that may be raised at any time.

For its part, OLCC asserts that preservation is not excused and that licensee failed to preserve its claim of error. Essentially, OLCC argues that licensee lost the right to challenge the substance of the final order by default when licensee failed to request a hearing on the proposed suspension. OLCC takes the view that licensee needed to request a hearing and then argue ORS 471.333(3) to obtain judicial review on that issue.

Although neither party has raised it, there is also a third possibility, which is that, absent a hearing, the petitioner may challenge whether a *prima facie* case was made but is limited to plain-error review. *See, e.g., Stewart v. Board of Parole*, 312 Or App 32, 35, 492 P3d 1283 (2021) ("Even if we were to conclude that the exhaustion requirement should

be relaxed * * *, such that only preservation-of-error princi-ples were in play, neither of the first two assigned errors is 'obvious and not reasonably in dispute' so as to qualify as plain error."); *see generally State v. Vanornum*, 354 Or 614, 629-30, 317 P3d 889 (2013) (describing discretionary plain-error review).

The preservation issue on the second assignment of error is a complex one. The parties have not identified any case law on point, nor have we found any. For trial court litigation, a specific statute addresses appeals from default judgments, limiting them to narrow circumstances. *See* ORS 19.245(2) (allowing a claimant to appeal a default judgment "if the judgment is not in accord with the relief demanded in the complaint," and allowing a defendant to appeal "if the trial court has entered a default judgment against the defendant as a sanction or has denied a motion to set aside a default order or judgment" or if the judgment is void). The parties have not identified any comparable provision rele-vant to final orders by administrative agencies.

Instead, licensee makes a practical argument that verges on a policy argument: Licensee contends that the *prima facie* case requirement in ORS 183.417(4) would be meaningless without judicial review. But it could equally be said that the requirement to request a hearing to contest a proposed administrative sanction would be meaningless if a party could forgo a hearing and nonetheless challenge the substance of the final order on judicial review. Each approach is both appealing and problematic in its own ways. For that reason, whether a party can challenge the substance of a final order by default in an administrative proceeding, without having timely requested a hearing, seems more like a legislative policy question than an issue of appellate preservation.

Licensee also argues that this is a jurisdictional issue, such that it can be raised at any time. *See, e.g.*, *Kleikamp v. Board of Commissioners of Yamhill County*, 301 Or App 275, 281, 455 P3d 546 (2019) ("A lack of subject mat-ter jurisdiction can be raised at any time."). We disagree. ORS 471.333(3) is directive in nature, not jurisdictional, so a failure to properly apply ORS 471.333(3) would be legal

error, but it would not create a jurisdictional problem. *See Weatherspoon v. Allstate Ins. Co.*, 193 Or App 330, 336-37, 89 P3d 1277, *rev den*, 337 Or 327 (2004) ("[A] court's erroneous exercise of statutory authority does not always equate with an absence of jurisdiction * * *. Rather, jurisdiction in such cases will depend on whether the statute or rule governing the exercise of authority is directory or jurisdictional in nature.").

Beyond that, we are reluctant to address such a significant issue without meaningful briefing, particularly when it is unclear that the issue is really preservation, rather than reviewability. Because we ultimately disagree with licensee on the merits in any event, we decline to resolve the "preservation" issue and instead proceed to the merits, assuming without deciding that the issue is properly before us.

B.   *Merits*

On the merits, we must determine whether OLCC "erroneously interpreted a provision of law" and whether "a correct interpretation compels a particular action" in this case. ORS 183.482(8)(a).

One of the functions, duties, and powers of OLCC is "[t]o grant, refuse, suspend or cancel licenses and permits for the sale or manufacture of alcoholic liquor." ORS 471.730(2). Another is "[t]o adopt such regulations as are necessary and feasible for carrying out the provisions of [chapter 471] and ORS 474.105 and 474.115." ORS 471.730(5). Once adopted, OLCC regulations "have the full force and effect of law." *Id*.

Under ORS 471.315, OLCC "may cancel, suspend, restrict or require mandatory training for any license issued under [chapter 471], or impose a civil penalty in lieu of or in addition to a suspension as provided by ORS 471.322," if OLCC "finds or has reasonable ground to believe" that any one of 12 circumstances exist, as delineated in ORS 471.315(1)(a) to (c). One of those circumstances is that the licensee "[h]as violated any provision of [chapter 471] or ORS 474.115 or any rule of [OLCC] adopted pursuant thereto." ORS 471.315(1)(a)(A). Another is that the licensee has "maintained an insanitary establishment." ORS 471.315

(1)(a)(D). Others include, for example, a licensee having made false representations to OLCC, not meeting bond and insurance requirements, being insolvent, being unable to manage the establishment, selling alcohol to minors, and serving alcohol to visibly intoxicated people. ORS 471.315(1)(a)(B), (C), (E), (G), and (H). There is also a thirteenth catch-all circumstance that applies when "there is any other reason that, in the opinion of [OLCC], based on public convenience or necessity, warrants canceling or suspending a license." ORS 471.315(1)(d).

With respect to OLCC's authority to suspend a liquor license based on the licensee having "maintained an insanitary establishment," ORS 471.315(1)(a)(D), the legislature has placed a limitation on OLCC's authority. ORS 471.333 provides:

"(1) Except as provided in subsections (2) and (3) of this section, the Oregon Liquor and Cannabis Commission shall not refuse to issue, cancel or suspend a license under ORS 471.313, 471.315 or 471.425 for maintaining an insanitary establishment.

"(2) The commission may refuse to issue, cancel or suspend a license under ORS 471.313, 471.315 or 471.425 for *maintaining an insanitary establishment in violation of a city ordinance relating to sanitation* only if the licensee is convicted of violating the ordinance.

"(3) The commission may refuse to issue, cancel or suspend a license under ORS 471.313, 471.315 or 471.425 *for maintaining an insanitary establishment in violation of ORS 447.010 to 447.156 and 447.992 or the laws, orders or rules relating to public health of the Oregon Health Authority or the State Department of Agriculture* only when the agency charged with enforcing those laws, orders or rules finds that the licensee is in violation of them and renders a final order adverse to the licensee."

(Emphases added.)

Thus, under ORS 471.333, OLCC can suspend a licensee's liquor license for "maintaining an insanitary establishment" only if one of four factual scenarios exists: (1) the licensee has been convicted of violating a city ordinance relating to sanitation; (2) the licensee has been found

in a final order by "the agency charged with enforc[ement]" to have violated ORS 447.010 to 447.156 and ORS 447.992, regarding plumbing and architectural barriers;[5] (3) the licensee has been found in a final order by "the agency charged with enforc[ement]" to have violated the laws, orders or rules relating to public health of OHA; or (4) the licensee has been found in a final order by "the agency charged with enforc[ement]" to have violated the laws, orders or rules relating to public health of the Oregon Department of Agriculture (ODA).

In this case, in its final order by default of May 17, 2021, OLCC found licensee to have violated OAR 845-006-0345(15) and OAR 845-006-0345(16).

OAR 845-006-0345(15) is an OLCC rule that prohibits licensees from engaging in activities relating to alcohol that violate "an order issued by the Governor":

> "No licensee or permittee will engage in or permit any activity relating to the manufacture, possession, sale, purchase, transportation, importation or delivery of alcoholic liquor that violates an order issued by the Governor. A licensee's or permittee's failure to follow this rule creates an immediate and serious danger to the health and safety of all patrons and employees on the premises. Violation of this section is a Category II violation."

OLCC found licensee to have violated EO 20-66, an order issued by the Governor, by allowing indoor dining and not requiring entertainers to wear masks. Specifically, OLCC found licensee to have violated EO 20-66 paragraphs 2(a), (b), and (c) and (4)(c). EO 20-66(2)(a) provides that the Governor will approve the mandated OHA guidance before its issuance and that, upon approval, the OHA guidance will become part of the directives of EO 20-66. EO 20-66(2)(b) provides that, once approved, the OHA guidance issued to implement EO 20-66 is enforceable "to the same extent" as EO 20-66 is enforceable. EO 20-66(2)(c) directs businesses and others to comply with OHA guidance issued under the authority of EO 20-66. And EO 20-66(4)(c) requires business

---

[5] ORS 447.010 to 447.156 address plumbing and architectural barriers. ORS 447.992 authorizes the State Plumbing Board to impose civil penalties for violations of ORS 447.010 to 447.156 and rules adopted thereto.

and others to "be aware of the Risk Level in the counties where they operate and comply with the requirements applicable to those Risk Levels established in OHA guidance."

OAR 845-006-0345(16) is an OLCC rule, applicable only during "a state of emergency declared by the Governor," that prohibits licensees from engaging in activities relating to alcohol that violate "a public health law, as defined in ORS 431A.005, that is created pursuant to an order issued by the Governor":

> "No licensee or permittee will engage in or permit any activity relating to the manufacture, possession, sale, purchase, transportation, importation or delivery of alcoholic liquor that violates a public health law, as defined in ORS 431A.005, that is created pursuant to an order issued by the Governor. This rule only applies to activity that occurs during a state of emergency declared by the Governor. A licensee's or permittee's failure to follow this rule creates an immediate and serious danger to the health and safety of all patrons and employees on the premises. Violation of this section is a Category II violation."

OLCC found licensee to have violated OHA guidance created pursuant to EO 20-66—which OLCC concluded (and no one disputes) are public health laws as defined in ORS 431A.005 that were created pursuant to an order issued by the Governor—by allowing indoor dining and not requiring entertainers to wear masks. Specifically, OLCC found licensee to have violated OHA Sector Guidance for Eating and Drinking Establishments; OHA Statewide Reopening Guidance—Masks, Face Coverings, Face Shields; OHA Sector Risk Level Guidance Chart; OHA Sector Guidance for Indoor Entertainment Establishments; and/or OHA Sector Guidance—General Guidance for Employers.

The primary dispute between the parties, as relevant to the merits of the second assignment of error, is whether OLCC suspended licensee's liquor license for "maintaining an insanitary establishment," such that ORS 471.333 applies. Licensee contends that OLCC did, while OLCC maintains that it did not. To the extent that that dispute turns on matters of statutory construction, we seek to ascertain the enacting legislature's intent by examining the disputed provision's text and context, as well as any helpful

legislative history of which we are aware. *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009). Text and context "must be given primary weight in the analysis," as only the text "receives the consideration and approval of a majority of the members of the legislature." *Id.* at 171. The parties agree that the construction of ORS 471.333(3) is a matter of first impression.

As a preliminary matter, we note that we do not necessarily agree with licensee's presumption that, if ORS 471.333(3) applies, then OLCC itself could not find licensee in violation of EO 20-66 or OHA guidance created under EO 20-66, because ORS 471.333(2) requires "the agency charged with enforcing" the "laws, orders or rules relating to public health of the Oregon Health Authority" to make that finding. It is not clear that OHA is the sole "agency charged with enforcing" OHA guidance created pursuant to EO 20-66. EO 20-66(2)(a) provides that the mandated OHA guidance must be approved by the Governor, at which point it becomes part of EO 20-66, and EO 20-66(10)(c) expressly directs "other state agencies with regulatory enforcement authority," including OLCC (which is named), "to continue their efforts to protect the lives and health of Oregonians, under existing civil and administrative authorities, the directives in [EO 20-66], the Risk Level Metrics, and any guidance issued by OHA or other state agencies to implement [EO 20-66]." Given the terms of EO 20-66, we are not convinced that OHA is the sole agency charged with enforcing OHA guidance created under EO 20-66. We need not conclusively address that issue, however, because we are persuaded that ORS 471.333 does not apply here.

ORS 471.333(1) provides that OLCC "shall not refuse to issue, cancel or suspend a license under ORS 471.313, 471.315 or 471.425 for maintaining an insanitary establishment," except as provided in ORS 471.333(2) and (3). Each of the three statutes cited in ORS 471.333(1)—that is, ORS 471.313, ORS 471.315, and ORS 471.425—contain a specific provision regarding an "insanitary establishment." ORS 471.313 lists 14 bases on which OLCC may refuse to issue a license or issue a restricted license, one of which is if the applicant "[h]as maintained an insanitary establishment." ORS 417.313(4)(e). ORS 471.315 lists 13 bases on

which OLCC may cancel, suspend, restrict, or require mandatory training for an existing license, one of which is if the licensee "[h]as maintained an insanitary establishment." ORS 471.315(1)(a)(D). ORS 471.425 prohibits various types of conduct, including the maintenance of a "noisy, lewd, disorderly or insanitary establishment" by an OLCC licensee. ORS 471.425(2).

Given its text and context, we understand ORS 471.333(1) to limit OLCC's authority to do any of three specific things: (1) refuse to issue a license or issue a restricted license because the applicant "[h]as maintained an insanitary establishment," ORS 471.313(4)(e); (2) cancel, suspend, restrict, or require mandatory training for an existing license because the licensee "[h]as maintained an insanitary establishment," ORS 471.315(1)(a)(D); or (3) refuse to issue, cancel, or suspend a license for violating the statutory prohibition on maintaining an "insanitary establishment," ORS 471.425(2).

OLCC did not do any of those things. OLCC did not allege in the March 9 charging document that licensee had maintained an insanitary establishment. In the May 17 order by default, OLCC made no mention of licensee maintaining an insanitary establishment. The stated bases for the 38-day suspension are that licensee violated OAR 845-006-0345(15) and (16), not that licensee maintained an insanitary establishment.

ORS 471.315(1)(a)(A) authorizes OLCC to suspend a liquor license if it finds that the licensee violated any OLCC rule adopted pursuant to ORS chapter 471. Licensee does not contest, and it would be difficult to dispute, that OLCC adopted OAR 845-006-0345(15) and (16) pursuant to chapter 471. As stated in ORS 471.030(1)(c), a purpose of the Liquor Control Act is "[t]o protect the safety, welfare, health, peace and morals of the people of the state." To carry out and effectuate the purposes of the act, OLCC has been granted certain powers and duties, ORS 471.040(1), including the authority to adopt regulations regarding the sale of alcoholic liquors, ORS 471.730. OLCC necessarily adopted OAR 845-006-0345(15) and (16) pursuant to ORS chapter 471, as that is the source of OLCC's authority to adopt regulations.

Nonetheless, licensee argues that ORS 471.333 applies because the unspoken substance of OLCC's suspension order was that licensee maintained an insanitary establishment. The premise of licensee's argument is that all OHA regulations relating to public health—including indoor dining restrictions and mask requirements adopted for the COVID-19 state of emergency—pertain to sanitation. That is, in licensee's view, anytime that a licensee violates an OHA regulation relating to public health, the licensee is necessarily and automatically *maintaining an insanitary establishment*, and so it should follow that ORS 471.333 applies to any OLCC action that involves a licensee violating an OHA regulation. By logical extension, the same principle would apply to all ODA regulations relating to public health.

OHA has broad authority, including "direct supervision of all matters relating to the preservation of life and health of the people of this state." ORS 431.110(1). OHA has promulgated a vast array of rules relating to public health, many of which do not pertain to sanitation as that term is commonly used. *See* OAR chapter 333 (containing hundreds of OHA rules). At the same time, licensee may be correct that "insanitary" has a broad enough meaning to capture all public health regulations, even if some—such as indoor-dining restrictions and mask requirements—are not what immediately come to mind as "sanitation." *See Webster's Third New Int'l Dictionary* 1168 (unabridged ed 2002) ("insanitary" means "deficient in sanitation : unclean to such a degree as to be injurious to health : CONTAMINATED, FILTHY, UNHEALTHY"); *see also id.* at 2012 (one meaning of "sanitation" is "the application of measures to make environmental conditions favorable to health").[6]

---

[6] In advocating for a broad meaning of "insanitary," licensee also points to ORS 471.732. ORS 471.732(1) contains a legislative finding and declaration "that the regulation of health and sanitation matters in premises licensed by [OLCC] under [chapter 471] can best be performed by [OHA] and [ODA]." ORS 471.732(2) states that it "is the policy of the Legislative Assembly and the intent of ORS 471.333 and 624.010 and this section that premises licensed by [OLCC] under this chapter shall be subject to the laws governing health and sanitation matters, including any applicable licensing requirements, and to the rules adopted thereunder by the authority and the department." We reserve opinion on the significance of ORS 471.732, noting only that it seems to distinguish between "health" and "sanitation" and that OLCC having a role in enforcing public health protections does not necessarily conflict with OHA and ODA being best positioned to regulate health and sanitation.

Even if licensee is correct about the meaning of the word "insanitary," however, such that anyone who violates an OHA public health regulation is also maintaining an insanitary establishment, there is still a fundamental problem with licensee's argument. The problem is that ORS 471.315(1)(a)(A) expressly authorizes OLCC to suspend a license if it finds that the licensee violated an *OLCC rule*. Here, OLCC suspended licensee's license for violating two OLCC rules, not for maintaining an insanitary establishment. Violating an OLCC rule (ORS 471.315(1)(a)(A)) and maintaining an insanitary establishment (ORS 471.315 (1)(a)(D)) are two separate and distinct bases for suspension

In arguing that ORS 471.333 nonetheless applied to limit OLCC's suspension authority, licensee is in a way indirectly challenging the validity of OAR 845-006-0345(15) and (16). But licensee has not actually challenged the validity of those rules.[7] They are presumptively valid, and we do not see why OLCC could not suspend licensee's license based on licensee violating OLCC's own rules, under authority of ORS 471.315(1)(a)(A).[8] That is, we do not see any reason that OLCC *had* to proceed under ORS 471.315(1)(a)(D), regarding suspension for maintaining an insanitary establishment, nor did it do so. If OAR 845-006-0345(15) and (16) did not exist, then it is possible that OLCC might have instead sought to suspend licensee's license for maintaining an insanitary establishment in violation of OHA rules, under authority of ORS 471.315(1)(a)(D) and ORS 471.333(3),[9] or because public necessity warranted the suspension, under

---

[7] Licensee has never purported to challenge the validity of OAR 845-006-0345(15) and (16), nor has licensee developed any argument that those rules exceed OLCC's statutory authority or are otherwise invalid. Instead, licensee makes an argument about the *prima facie* case requirement in ORS 183.417(4). We express no opinion on the validity of OAR 845-006-0345(15) and (16).

[8] It is also worth recalling that the guidelines that OHA created pursuant to EO 20-66 are not *only* OHA rules. They are also part of EO 20-66 itself. EO 20-66(2)(a) ("Upon approval, the OHA guidance will become part of the directives of this Executive Order[.]"). Licensee never explains why ORS 471.333(3) would apply to OLCC's suspension of a license for maintaining an insanitary establishment in violation of an executive order of the Governor.

[9] We speak theoretically, because OLCC's current position is that licensee did *not* maintain an insanitary establishment, based on OLCC's understanding of "insanitary." In other words, OLCC's view is that it could not have suspended licensee's license for maintaining an insanitary establishment based on indoor-dining and mask violations.

authority of ORS 471.315(1)(d). But that would be a different case.

Because OLCC suspended licensee's license for violating OAR 845-006-0345(15) and (16), as authorized by ORS 471.315(1)(a)(A), not for maintaining an insanitary establishment, we reject licensee's second assignment of error, even assuming arguendo that it was adequately preserved and is properly before us on appeal.

Affirmed.