Argued December 17; affirmed December 18, 1947

## MARR *v.* FISHER ET AL.

187 P. (2d) 966

*Carl H. Francis,* of Dayton, and *Elliott B. Cummins,* of McMinnville, for appellants.

*George Neuner,* Attorney General, of Salem, and *Dean Ellis,* Assistant Attorney General, of Salem, for respondents.

Before ROSSMAN, Chief Justice, and LUSK, BELT, KELLY, BAILEY and WINSLOW, Justices.

BELT, J.

This is a suit challenging the constitutionality of Chapters 536 and 539, Oregon Laws 1947. Chapter 536 pertains to the withholding by employers of income tax from wages and salaries of employees. Chapter 539 relates to personal income tax exemptions. These two Acts were passed by the legislature in conjunction with the Sales Tax Act, Chapter 540, Oregon Laws 1947, all of which were filed in the office of the Secretary of State on April 19, 1947. The legislature specifically referred the Sales Tax Act to the people for their approval or rejection at a special election held throughout the state on October 7, 1947, and the electorate at such election rejected the Act.

Chapter 539, § 1 provides, so far as material herein, that for tax years (or periods) beginning on or after January 1, 1947, "and in the event that a general sales tax * * * is enacted and is in full force and effect in this state on and after January 1, 1948, there shall be deducted * * * the following personal exemptions and credits * * *." The Act then sets forth a schedule of exemptions and credits resulting in lower personal income taxes. In other words, the exemptions and credits were increased over those provided in the income tax law prior to amendment.

Section 2 of the Act provides in substance that in the event a general sales tax "is not enacted and is not in full force and effect in this state on and after January 1, 1948, there shall be deducted * * * the following exemptions and credits * * *." Then fol-

lows a schedule of lower exemptions and credits, resulting in higher personal income taxes.

Chapter 536 requires employers to withhold one per cent of the gross amount of wages and salaries paid to employees and to pay the same to the State Tax Commission to be credited to the income tax liability of the individual employees. The pertinent provision of this Act is as follows:

"7. This act shall be effective with respect to all wages, salaries, bonuses or other emoluments for services as an employe, paid on or after January 1, 1948; provided, that this act shall not become operative with respect to such wages, salaries, bonuses or other emoluments for services of an employe if, on or before January 1, 1948, any act increasing the amount of the personal exemptions as provided for by section 110-1613, O. C. L. A., as amended by section 3, chapter 411, Oregon Laws 1945, has become effective and operative."

In other words, the withholding of such wages and salaries would not be operative if the income tax was lowered. Whether the income tax would be increased or decreased depended on the result of the referendum of the Sales Tax Act at the special election above mentioned.

Assuming the constitutionality of Chapters 536 and 539, these two Acts became laws on July 5, 1947, or ninety days after final adjournment of the legislature.

Plaintiffs challenge the constitutionality of Chapter 539 (Income Tax Act) on two grounds: (1) That the Act violates Article I, Section 21 of the Constitution of Oregon, which provides: "* * * Nor shall any law be passed, the taking effect of which shall be made to depend upon any authority, except as provided in this constitution * * *." More specifically,

plaintiffs contend that the taking effect of Chapter 539 was made to depend upon the action of the people in approving or rejecting Chapter 540 (Sales Tax Act) and that such legislative procedure is in contravention of the above constitutional provision. (2) That the Act, as related to Chapter 540, denied to the people the right of exercising the referendum concerning such legislative enactment and, therefore, was violative of Art. IV, § 1 of the Constitution of Oregon, reserving to the people the powers of the Initiative and Referendum.

Plaintiffs contend that Chapter 536 (Withholding Income Tax Act) is unconstitutional for the same reasons urged against Chapter 539. Since the same legal principles are applicable to these two Acts, it follows that the conclusion reached relative to one will control the other. In this opinion we will consider primarily the law as applied to Chapter 539—the Income Tax Exemption Act.

 The State Constitution is an instrument of limitations and not an instrument of grant, as is the Federal Constitution, and the legislative assembly can enact any legislation not prohibited. *State v. Hecker,* 109 Or. 520, 221 P. 808; *Wright v. Beveridge,* 120 Or. 244, 251 P. 895. The legislature has all powers of legislation, except in so far as it may be restrained, expressly or by necessary implication, by the Constitution of the State, or of the United States. We are concerned not with the motives of the law-making body in enacting the legislation in question, but with its power to do so. As Justice HUGHES said in *Chicago, Burlington & Quincy R. R. Co. v. McGuire,* 219 U. S. 549, 55 L. ed. 328, 31 Sup. Ct. 259:

"The mere fact * * * that judges may hold

views inconsistent with the propriety of the legislation in question, affords no ground for judicial interference, unless the act in question is unmistakably and palpably in excess of legislative power."

It is also a fundamental rule—for which no authorities need be cited—that courts are reluctant to declare a legislative enactment void and will do so only when its invalidity is clearly established.

■■ The purpose of the constitutional provision (Art. I, § 21), relied upon by plaintiffs, is to prevent unlawful delegation of legislative authority. The lawmaking power, under the Constitution of Oregon (Art. IV, § 1) is vested in the legislature, but the people have reserved unto themselves the power to initiate laws and to approve or reject at the polls any act of the legislative assembly. The people, having thus vested the legislative assembly with the law-making power, have in effect said that the legislature cannot confer such power upon any authority, except as provided in the Constitution. It is the constitutional function of the legislature to declare whether there is to be a law; and, if so, what are its terms. *La Forge v. Ellis*, 175 Or. 545, 154 P. (2d) 844; *Van Winkle v. Meyers*, 151 Or. 455, 49 P. (2d) 1140.

■ While the legislature cannot delegate its power to make a law, it is well settled that it may make a law to become operative on the happening of a certain contingency or future event. 11 Am. Jur. 926, § 216; 50 Am. Jur. 516, § 497. The rule is thus clearly stated in 16 C. J. S. 415, § 141:

"It is a general rule that where an act is clothed with all the forms of law and is complete in and of itself, it is fairly within the scope of the legislative power to prescribe that it shall become operative only on the happening of some specified contingency, contingencies, or succession of contin-

gencies. Such a statute lies dormant until called into active force by the existence of the conditions on which it is intended to operate." Citing numerous authorities in support of the text.

We think the decision hinges on the question as to whether Chapter 539 was complete in and of itself when it was passed by the legislature and approved by the Governor. The Act went into effect as a law upon the expiration of ninety days from and after the final adjournment of the legislative session. Its operative effect was suspended until the happening of the contingency designated in the Act. If the Act was complete in the sense that the legislative assembly had exercised its discretion and judgment as to the expediency or inexpediency of the income tax exemption provisions—and we think it did—it had the power to determine the conditions on which such Act should go into operation. Indeed, the Constitution itself (Art. I, § 22) expressly confers upon the legislative assembly the right to suspend the operation of laws. If the rule were otherwise, the legislature would indeed be at a great disadvantage in solving many of the complex and difficult problems with which it is confronted. *Libby v. Olcott*, 66 Or. 124, 134 P. 13; *Fouts v. Hood River*, 46 Or. 492, 81 P. 370, 1 L. R. A. (N. S.) 483, involving the constitutionality of the "Local Option Act" (General Laws of Oregon 1905, Chapter 2); *Phoenix Insurance Company v. Welch*, 29 Kan. 672; *People ex rel. v. Barnett*, 344 Ill. 62, 176 N. E. 108, 76 A. L. R. 1044 and note; *Home Insurance Company v. Swigert*, 104 Ill. 653; *People ex rel. v. Kennedy*, 207 N. Y. 533, 101 N. E. 442, 154 App. Div. 558, 139 N. Y. S. 896; *Wright v. Cunningham*, 115 Tenn. 445, 91 S. W. 293; *Commonwealth v. Goldburg*, 167 Ky. 96, 180 S. W. 68; *State v. Parker*, 26 Vt. 357.

In *Phoenix Insurance Company v. Welch,* supra, the court, speaking through Justice BREWER, who later graced the United States Supreme Court, held an insurance law valid whose operative effect was made to depend on a contingency of a legislative enactment of another state. The Act provided in substance that when the laws of any other state imposed upon the corporations of the state of Kansas applying to transact business within its limits other and more onerous burdens and conditions than those prescribed by the laws of Kansas for corporations seeking to transact business in Kansas, the same burdens and conditions shall be imposed upon foreign corporations applying to transact business in the state of Kansas. It was urged there as here that such legislation was unconstitutional in that there was unlawful delegation of legislative authority. This contention was not sustained, the court holding that the legislature could constitutionally pass a law whose operation was made to depend on a contingency of a legislative enactment of a foreign state. If this is a valid contingency—and we agree that it was—it would seem that the legislature of this state was acting well within its constitutional powers when it provided that the operative effect of the Income Tax Exemption Act depended on the contingency of the Sales Tax election.

It is a fair inference from this interrelated legislation that the legislature was faced with a serious problem of finance. Where would it obtain funds to carry on governmental affairs? There were two available sources from which funds could be derived, viz., a Sales Tax and an increased Income Tax. The legislature no doubt concluded that if the Sales Tax was approved by the people at the polls, there would be less need of

exacting income taxes; but that if the Sales Tax was rejected, the income tax must be increased. Hence a law complete in and of itself was enacted in the alternative to meet this financial situation. There was no unlawful delegation of legislative authority involved. The legislature assumed its full responsibility and definitely fixed the income tax exemption that would apply on the happening of a certain valid contingency. When these two Acts came from the legislature, there was nothing more to be done so far as the making of the laws is concerned. The electorate in voting on the Sales Tax Act (Chapter 540) were concerned with the single question of approving or rejecting it. The vote cast did not in any particular change the Withholding Income Tax Act (Chapter 536) or the Income Tax Exemption Act (Chapter 539). These two Acts simply remained dormant until they were brought into operation by the happening of a contingency, viz., the rejection of the Sales Tax Act (Chapter 540).

Appellants rely strongly on *Barto v. Himrod,* 8 N. Y. 483, 59 Am. Dec. 506, in which an "Act establishing free schools throughout the state" was held unconstitutional for the reason that there was an unlawful delegation of legislative authority. In Section 10 of the New York Act it was provided that:

"The electors shall determine by ballot at the annual election to be held in November next *whether this act shall or shall not become a law.*"

The above section resulted in a complete abdication or surrender to the electorate by the legislature of its power to make laws. The case was correctly decided. We think it is an informative decision and, in our opinion, demonstrates the fallacy of the appellants' contentions herein.

■ As said in *State ex rel. v. Bixler,* 136 Ohio St. 263, 25 N. E. (2d) 341:

> "There is a distinction between a legislative declaration that an enactment shall not become a law until approved by some authority other than the General Assembly itself, and a statutory provision which has become law but depends for its execution upon a contingency or an eventuality. The former is prohibited; the latter is not."

In this state, laws may be enacted by two methods, viz.: (1) By the legislature; (2) By the people through the exercise of the Initiative. If the Acts in the instant case were incomplete when they came from the legislature, we would agree with appellants that they could not be made complete as a result of the referendum vote on the Sales Tax Act. The record, however, does not present that question.

■ We conclude that the legislature may constitutionally enact a law and make its operation depend upon the contingency of the Sales Tax being, or not being, in effect on and after January 1, 1948.

We see no merit in the contention that the people have been deprived of their constitutional right to invoke the referendum on the Acts in question. Article IV, § 1a of the Constitution of Oregon provides:

> "The referendum may be demanded by the people against one or more items, sections or parts of any act of the legislative assembly in the same manner in which such power may be exercised against a complete act."

Under the above provision of the Constitution, the people could have invoked the referendum against any section or part of Chapter 536 or Chapter 539, and, under Art. IV, § 1, could have invoked it against either

or both of these chapters in their entirety. If the people had no desire to prevent the increased income tax exemptions from going into operative effect, they could have invoked the referendum only against that part of the Act decreasing personal income tax exemptions. Now, it may be that the legislature could have adopted a better method of legislation, but that is a matter resting within its discretion. Suffice it to say, the method adopted is not prohibited by the Constitution.

The decree of the Circuit Court sustaining the validity of Chapters 536 and 539, Oregon Laws 1947, is affirmed. Neither party will recover costs or disbursements.