No. 38          January 24, 2024          295

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

ALONG CAME TRUDY LLC,
dba Along Came Trudy,
*Petitioner,*

*v.*

OREGON LIQUOR AND CANNABIS COMMISSION,
*Respondent.*

Oregon Liquor and Cannabis Commission
OLCC21V003; A178679

Argued and submitted December 5, 2023.

Joseph O. Huddleston argued the cause for petitioner. Also on the briefs were Kevin L. Mannix and Kevin L. Mannix, P.C.

Inge D. Wells, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

This is a petition for judicial review of an order of the Oregon Liquor and Cannabis Commission (OLCC). Petitioner, doing business as a restaurant and event venue in Lane County, Oregon, challenges the OLCC's cancellation of its liquor license as a sanction for three violations of OAR 845-006-0345(15), an administrative rule of the OLCC prohibiting a licensee from violating "an order issued by the Governor." The OLCC charged petitioner with violations of Governor Kate Brown's Executive Order 20-66 (EO 20-66) by permitting indoor dining at its restaurant during a time when indoor restaurant dining was prohibited in Lane County as a result of the COVID-19 pandemic. Petitioner does not dispute that it violated EO-26 but contends that the OLCC erroneously relied on EO-26's incorporation of a "guidance" of the Oregon Health Authority that petitioner contends was legally invalid and enforced in violation of the Oregon Constitution. The petition presents questions of statutory and constitutional construction that we review under ORS 183.482(8)(a) to determine whether the OLCC "erroneously interpreted a provision of law." We conclude that the OLCC did not err and therefore affirm.

## STATUTORY CONTEXT

ORS chapter 401 contains the statutory provisions governing emergencies.[1] As relevant here, ORS 401.165(1) (2009)[2] provided that the Governor "may declare a state of emergency by proclamation *** after determining that an emergency has occurred or is imminent." ORS 401.025(1). A state of emergency declared by the Governor continues until it is terminated either by the Governor or the Legislative Assembly. ORS 401.204(1) (providing that "[t]he Governor shall terminate the state of emergency by proclamation when the emergency no longer exists, or when the threat of an emergency has passed"); ORS 401.204(2) (providing that

[1] An "emergency," as defined in ORS 401.025(1), is "a human created or natural event or circumstance that causes or threatens widespread loss of life, injury to person or property, human suffering or financial loss, including but not limited to *** disease."

[2] All further references are to the 2009 version of the statute, which was in effect at the relevant time. The statute was amended in 2021, Or Laws 2021 ch 539, § 33, but the amendments do not bear on the issues presented.

the state of emergency "may be terminated at any time by a joint resolution of the Legislative Assembly").

The Governor has wide-ranging statutory authority during a declared state of emergency. That includes "complete authority over all executive agencies of state government and the right to exercise, within the area designated in the proclamation, all police powers vested in the state by the Oregon Constitution in order to effectuate the purposes of this chapter," ORS 401.168(1), as well as the power to "[r]equire the aid and assistance of any state or other public or quasi-public agencies in the performance of duties and work attendant upon the emergency conditions in such area." ORS 401.175(5). Additionally, ORS 433.441(4), provides:

> "If a state of emergency is declared as authorized under ORS 401.165, the Governor may implement any action authorized by ORS 433.441 to 433.452."

The actions authorized by ORS 433.441 to 433.452 include requiring the closure of facilities, regulating goods and services, and controlling or limiting "entry into, exit from, movement within, and the occupancy of premises in any public area subject to or threatened by a public health emergency," as reasonably necessary to respond to the emergency. ORS 433.441(3)(d).

Thus, after the declaration of a state of emergency, within the limits of statutes and the state and federal constitutions, the Governor has broad authority under ORS 401.165 to 401.236 to take the actions authorized by those statutes "to effectuate the purposes" of ORS chapter 401. ORS 401.168(1).

Most significant to our analysis, ORS 401.192(1) provides:

> "All rules and orders issued under authority conferred by ORS 401.165 to 401.236 shall have the full force and effect of law both during and after the declaration of a state of emergency. All existing laws, ordinances, rules and orders inconsistent with ORS 401.165 to 401.236 shall be inoperative during the period of time and to the extent such inconsistencies exist."

EMERGENCY DECLARATION AND EO 20-66

Pursuant to ORS 401.165(1), on March 8, 2020, the Governor declared a state of emergency related to the COVID-19 pandemic. During the subsequent months, the Governor issued a series of executive orders.

In December 2020, the Governor issued EO 20-66, which included a directive to the OHA to develop guidance for the public, employers, and certain sectors of the economy relating to protective measures tied to the spread of COVID-19 in the community, identified by various risk levels. [3] EO 20-66 stated that the guidance would be subject to approval by the Governor and would be published on the websites of the Governor and the OHA. The executive order further provided:

---

[3] EO 20-66 provided in part:

**"Oregon Health Authority (OHA) to issue guidance for the public, employers, and sectors.**

"Throughout this pandemic, Oregon's response has shifted as conditions on the ground have shifted, and as emerging science and data have given us greater clarity regarding the best ways to manage this pandemic. Maintaining the flexibility to nimbly adjust as conditions and knowledge change is critical to an effective emergency response. Accordingly:

"a. I delegate to OHA the authority to develop and issue, and from time to time revise, binding guidance for the public, for employers, and for particular sectors of the economy, to implement the directives of this Executive Order. OHA guidance may also provide definitions, clarifications, or needed modifications to the directives in this Executive Order, and may identify certain business types, the operation of which is prohibited during this emergency. The Governor will approve OHA guidance before it is issued. Upon approval, the OHA guidance will become part of the directives of this Executive Order and will be published online on Governor Brown's website *** and the OHA website ***.

"b. As described more fully in paragraph 10 of this Executive Order, once approved by the Governor and published, guidance issued to implement this Executive Order is enforceable to the same extent this Executive Order is enforceable.

"c. In order to continue to control the spread and risk from COVID-19 in Oregon, individuals, businesses, and other covered entities are directed to comply with applicable OHA guidance issued under the authority of this Executive Order.

"d. Any guidance previously issued under the authority of Executive Orders 20-27 or 20-65 continues under the authority of this Executive Order unless and until that guidance is rescinded or modified by OHA or the issuing agency."

(Underlining and boldface in original.)

 "Upon approval, the OHA guidance will become part of the directives of this Executive Order[.]"

EO 20-66 provided that, once approved and published, the "guidance issued to implement this Executive Order is enforceable to the same extent this Executive Order is enforceable" and that "individuals, businesses, and other covered entities are directed to comply with applicable OHA guidance issued under the authority of this Executive Order."

EO 20-66 further directed the OHA to issue guidance "defining, and setting safety measures, operational limitations, and capacity limits" for certain businesses, including "eating and drinking establishments," based on the level of risk for each county. The executive order provided that, after approval by the Governor, such guidance would become binding.

EO 20-66 further directed "state agencies with regulatory enforcement authority," including the OLCC, to enforce "the directives in this Executive Order, the Risk Level Metrics, and any guidance issued by OHA or other state agencies to implement this Executive Order."

Effective December 3, 2020, as directed in EO 20-66 and authorized by ORS 433.441(3), the OHA issued, and the Governor's office approved, sector guidance for eating and drinking establishments. That guidance required those establishments to limit maximum capacity based on the designated risk level for the county "in which the establishment is located." It is undisputed that on the dates alleged in the notice of proposed cancellation, Lane County was designated as "extreme risk," and that all indoor restaurant dining was prohibited.

## THE OLCC's ADMINISTRATIVE RULES

Under ORS 471.315(1)(a)(A), the OLCC is authorized to cancel or suspend the liquor license of a licensee if the licensee has violated any of the liquor statutes or rules adopted by the OLCC. In response to the Governor's COVID-19 related executive orders and the OHA's sector guidance for eating and drinking establishments, the OLCC promulgated two administrative rules. OAR 845-006-0345(15)

(2020) prohibited licensees from engaging in activity related to alcohol that "violates an order issued by the Governor."[4] OAR 845-006-0345(16) (2020) prohibited licensees from violating "a public health law, as defined in ORS 431A.005, that is created pursuant to an order issued by the Governor." The temporary rules became effective March 22, 2020, and the final rules became effective December 18, 2020.

## THE OLCC ORDER

It is undisputed that petitioner, doing business as a restaurant in Lane County, chose not to comply with the OHA's guidance relating to indoor dining. In November 2021, the OLCC notified petitioner of the proposed cancellation of its liquor license, as a penalty for three violations of OAR 845-006-0345(15) (2020) or, alternatively, OAR 845-006-0345(16) (2020). After a contested case hearing, an administrative law judge (ALJ) found that, on at least three occasions, petitioner had allowed indoor dining, in violation of OHA guidance and OAR 845-006-0345(15). That finding is not challenged. The ALJ concluded that the appropriate penalty for petitioner's "repeated and intentional" violations of OAR 845-006-0345(15) was the cancellation of petitioner's license. The OLCC adopted the ALJ's order, rejecting petitioner's contention that the OHA's guidance relating to indoor dining constituted an invalid administrative rule rather than a part of EO 20-66.[5]

## APPEAL

As the Supreme Court stated in *Elkhorn Baptist Church v. Brown*, 366 Or 506, 25, 466 P3d 30 (2020), "the Governor's broad emergency powers are limited both by statutes and by the state and federal constitutions." Petitioner's assignments of error on judicial review assert statutory and constitutional limitations on the Governor's authority to

---

[4] OAR 845-006-0345(15) provides:

"No licensee or permittee will engage in or permit any activity relating to the manufacture, possession, sale, purchase, transportation, importation or delivery of alcoholic liquor that violates an order issued by the Governor. A licensee's or permittee's failure to follow this rule creates an immediate and serious danger to the health and safety of all patrons and employees on the premises. Violation of this section is a Category II violation."

[5] The OLCC order is stayed pending judicial review.

incorporate the particular OHA guidance into an executive order in the context of a declared emergency. In its first three assignments of error, petitioner attacks the OHA guidance and its validity as a part of EO 20-66. Petitioner contends that the Governor did not have authority to delegate to the OHA responsibility to develop guidance for indoor dining for inclusion into EO 20-66. Additionally, petitioner contends that, even if the Governor could delegate that responsibility to the OHA, the guidance that the OHA developed should have been separately filed with the Secretary of State, as required by ORS 183.355, and should have been adopted as an administrative rule under ORS chapter 183. In its fourth assignment, petitioner contends that ORS 401.192 violates provisions of the Oregon Constitution, Article I, sections 21 and 22, that prohibit the legislature from delegating law-making functions to the Governor and prohibit the Governor from suspending laws. In its fifth assignment of error, petitioner contends that the guidance of the OHA could not be implemented without a determination of a violation by the OHA.

A.  *First Through Third Assignments of Error, Challenging Statutory Validity*

Petitioner's first through third assignments of error raise statutory challenges to the validity of the OHA guidance as a part of EO 20-66. We have recently held that, upon the Governor's approval, the OHA's guidance became a part of EO 20-66. *JGB Enterprises, LLC v. OLCC*, 325 Or App 326, 353 n 8, 529 P3d 262 (2023). We adhere to that conclusion and reject each of petitioner's contrary arguments for the reasons explained below.

1.  *Contention that guidance must be in text of EO 20-66*

Petitioner contends that the OHA guidance was not a valid part of EO 20-66, because it was not set forth in the text of the executive order. But EO 20-66 states explicitly that OHA guidance, once approved by the Governor, "will become part of the directives of this Executive Order." ORS chapter 401 does not mandate any particular form for an executive order entered within the Governor's emergency authority; nor does it limit the Governor's authority to seek guidance from agencies—in fact, the power to seek such

guidance is explicitly stated in ORS 401.175(5) (authorizing Governor to "[r]equire the aid and assistance of any state or other public or quasi-public agencies in the performance of duties and work attendant upon the emergency conditions in such area"). We conclude that it was within the Governor's emergency authority under ORS chapter 401 to seek guidance from the OHA and to incorporate that guidance, as approved by the Governor, within EO 20-66.

>    2.   *Contention that guidance must be filed with Secretary of State*

The Governor's executive order was filed with the Secretary of State, but the guidance developed by the OHA was not.[6] Petitioner contends that, even assuming that the Governor could delegate responsibility to the OHA to develop guidance for an executive order, the OHA's guidance could not become a part of the executive order until it was filed with the Secretary of State, as required by ORS 183.355(5) ("A certified copy of each executive order issued, prescribed or promulgated by the Governor shall be filed in the office of the Secretary of State."). Petitioner contends that the failure to separately file the guidance rendered it invalid.

The OLCC responds that the failure to file the guidance with the Secretary of State does not invalidate the guidance. The OLCC notes that there is no requirement in ORS chapter 401 for a Governor's executive order issued in the context of an emergency to be filed with the Secretary of State. Additionally, the OLCC contends, the Governor's exercise of the emergency power through executive orders is not subject to the procedural requirements of the Administrative Procedure Act (APA).

We agree with the OLCC that the failure to file the OHA guidance with the Secretary of State did not render it invalid. As a textual matter, although ORS 183.355(5) states that a certified copy of "each executive order issued, prescribed or promulgated by the Governor" shall be filed with the Secretary of State, there is no provision stating that, to be valid, an executive order must be filed with the

_____

    [6] As the executive order required, however, the OHA guidance was placed on the Governor's and the OHA's websites, and there is no contention of a lack of actual notice of its contents.

Secretary of State. That contrasts with ORS 183.355(6)(a), which relates to administrative rules and states explicitly that "[a] rule is not valid or effective * * * until the rule is filed in accordance with this section." The legislature thus knows how condition the validity of an order on filing with the Secretary of State.

Further, as we have noted, the Governor's powers after the declaration of an emergency are broad. Consistent with that broad authority, under ORS 401.192(1), "[a]ll rules and orders issued under authority conferred by ORS 401.165 to 401.236 shall have the full force and effect of law both during and after the declaration of a state of emergency." It is undisputed that EO 20-66 was issued by the Governor under the authority of ORS 401.165 to 401.236. It therefore had the "full force and effect of law." EO 20-66 encompassed the Governor's directive to the OHA to provide guidance that, with the Governor's approval, would be incorporated into the executive order. Any procedural hurdle that might otherwise apply, outside of the context of an emergency declaration, cannot deprive the executive order of the full force and effect of law.[7] Thus, even assuming, as petitioner argues, that the OHA guidance incorporated into EO 20-66 should have been separately filed with the Secretary of State, the failure to separately file the guidance with the Secretary of State did not render it invalid. We reject petitioner's argument that our construction renders ORS 183.355(5) superfluous. The statute applies to executive orders, but in the context of a declared emergency, an executive order entered within the Governor's authority under ORS 401.165 to 401.236 is not rendered invalid by a failure to file it with the Secretary of State.

    3.   *Contention that guidance must be adopted as an administrative rule*

Executive orders of the Governor do not constitute administrative rules. ORS 183.310(9)(e). Although ORS chapter 401 leaves little doubt that the Governor's emergency executive orders *can* be implemented through

---

[7] We note that the rule-making procedures set forth in ORS 183.335 to 183.355 include, among other requirements, proper notice of proposed rulemaking, fiscal impact statements, a hearing, and public participation.

administrative rules, *see* ORS 401.192(1) (providing that, in the context of a declared emergency, "[a]ll rules and orders issued under authority conferred by ORS 401.165 to 401.236 shall have the full force and effect of law"), petitioner has not demonstrated that ORS chapter 401 *requires* that the Governor's emergency executive authority be carried out only through administrative rule. *See PNW Metal Recycling, Inc. v. Oregon Dept of Environmental Quality*, 371 Or 673, 685, 540 P3d 523 (2023) (Petitioner failed to demonstrate that rulemaking was the "required path."). *See also Homestyle Direct, LLC v. DHS*, 354 Or 253, 266, 311 P3d 487 (2013) ("Whether an agency is required to adopt a policy that qualifies as a 'rule' solely by means of rulemaking procedures depends on whether the legislature has declared that rulemaking is the sole acceptable means of adopting the particular policy at issue."). Our conclusions that the Governor lawfully directed the OHA to develop guidance, and that that guidance, after the Governor's approval, was incorporated within EO 20-66, dispose of petitioner's contention that the guidance was required to be adopted as an administrative rule.

More to the point, however, ORS 183.310(9) defines a "rule" to include "any *agency* directive, standard, regulation * * * that implements, interprets or prescribes law or policy." (Emphasis added); *see also PNW Metal Recycling, Inc*, 371 Or at 687 (noting that ORS 183.310(9) refers to an "agency directive, standard, regulation or statement of general applicability that implements, interprets or prescribes law or policy"). Although by its form and general applicability the OHA guidance bears the characteristics of an administrative rule, the OLCC correctly concluded that the OHA guidance did not constitute an administrative rule, because it was not an "*agency* directive, standard, regulation or statement of general applicability." The guidance, although developed by OHA, was a directive of the Governor.

We recognize that in *Mooney v. Oregon Health Authority*, 314 Or App 809, 810, 500 P3d 79 (2021), we stated in *dictum* that a guidance of the OHA relating to the Governor's emergency COVID-19 executive orders *appeared* to be an administrative rule to which rule adoption procedures of

the APA would apply. *Mooney*, however, is distinguishable. *Mooney* was itself a rule challenge under ORS 183.400 to a guidance issued by OHA. We did not need to decide in *Mooney* whether the guidance was in fact an administrative rule, because we determined that the petitioner's challenge to the guidance was moot, the guidance having been superseded by additional guidance and an administrative rule.

*Mooney* is distinguishable in other ways as well. The statement from *Mooney* that petitioner cites also observed that the record did not demonstrate that the OHA guidance was part of an executive order. *Id*. ("[T]here is nothing on the face of the guidance or in the record supplied to us by the OHA (which contains only the guidance itself) that would permit the conclusion that it is itself an unreviewable executive order of the Governor."). Here, in contrast, the disputed OHA guidance was approved by the Governor's office and explicitly incorporated into EO 20-66. Finally, *Mooney* did not address the effect of ORS 401.192, which we have concluded is crucial to the analysis of the Governor's powers under ORS 401.165 to 401.236. We reject petitioner's contention that *Mooney* requires the conclusion here that the OHA guidance issued pursuant to EO 20-66 was required to be adopted as an administrative rule.

B.   *Fourth Assignment of Error—Constitutionality*

   1.   *Article I, section 21*

      Article I, section 21, of the Oregon Constitution provides that "[n]o * * * law [shall] be passed, the taking effect of which shall be made to depend upon any authority, except as provided in this Constitution[.]"[8] That section is understood to prohibit a delegation by the legislature of the authority to make laws, but to allow a law enacted by the legislature to become effective upon the happening of a defined contingency. *See Marr v. Fisher et al.*, 182 Or 383, 388, 187 P2d 966

---

[8] Article I, section 21, provides:

   "No ex-post facto law, or law impairing the obligation of contracts shall ever be passed, nor shall any law be passed, the taking effect of which shall be made to depend upon any authority, except as provided in this Constitution; provided, that laws locating the Capitol of the State, locating County Seats, and submitting town, and corporate acts, and other local, and Special laws may take effect, or not, upon a vote of the electors interested."

(1947) (Under Article I, section 21, although "the legislature cannot delegate its power to make a law, it is well settled that it may make a law to become operative on the happening of a certain contingency or future event."). Petitioner contends in its fourth assignment of error that, to the extent that ORS 401.192 declares that all rules and orders entered under the authority of ORS 401.165 to 401.236 "shall have the full force and effect of law" and that "[a]ll existing laws, ordinances, rules and orders inconsistent with ORS 401.165 to 401.236 shall be inoperative during the period of time and to the extent such inconsistencies exist," the statute violates Article I, sections 21, as an unlawful delegation to the Governor of the power to suspend state laws in the context of an emergency.[9] As explained below, we reject the contention.

The purpose of Article I, section 21, is to "prevent unlawful delegation of legislative authority" to make laws. *Marr*, 182 Or at 388. In *State v. Long*, 315 Or 95, 99, 843 P2d 420 (1992), the court said that the constitutional prohibition on delegation of legislative powers is not absolute. The legislature may delegate authority to other bodies "to adopt rules that define or implement broad statutory standards." *Id*. at 101. Whether the legislature unconstitutionally delegates its authority in any particular instance, the court said, depends "on the presence or absence of adequate legislative standards and whether the legislative policy has been followed." *Id*. at 102. *See State v. Davilla*, 234 Or App 637, 230 P3d 22, *adh'd to on recons*, 124 Or App 87, 860 P2d 894 (1993), *rev den,* 318 Or 350 (1994) (same). Here, the legislature's enactment of ORS 401.192(1) did not delegate to the Governor the authority to enact legislation. Rather, the legislature expressed the policy that, upon the happening of a contingency—the declaration of a state of emergency—the Governor shall have the authority to take the actions described in ORS 401.165 to 401.236, and that the Governor's "rules and orders" made under the authority of ORS 401.165 to 401.236 "shall have the full force and effect of law." The

---

[9] The OLCC contends that petitioner failed to preserve its argument under Article I, section 21. We have reviewed the record and conclude that petitioner's argument is preserved, thinly. Although petitioner did not cite that constitutional provision in any of its briefing to the OLCC, at an "exceptions" hearing before the OLCC, petitioner's counsel did make the same argument under Article I, section 21.

statute reflects the legislature's completed policy to provide the Governor with broad *enforceable* authority in an emergency to take the actions that are necessary, as described by the standards set forth ORS 401.165 to 401.236, to protect public health and safety. And as a protective backstop, the Legislative Assembly provided in ORS 401.204(2) that the state of emergency "may be terminated at any time by a joint resolution of the Legislative Assembly." We reject petitioner's contention that ORS 401.192 constitutes an unlawful delegation of the legislature's authority to enact laws. There is no violation of Article I, section 21.

2. *Article I, section 22*

Petitioner makes a similar argument under Article I, section 22, of the Oregon Constitution, which provides that "[t]he operation of the laws shall never be suspended, except by the Authority of the Legislative Assembly." Petitioner contends that ORS 401.192 violates Article I, section 22, in that it allows the Governor—rather than the legislature—to override and thereby suspend state law in the event of an emergency. We disagree that ORS 401.192 provides for a suspension of state law by the Governor. Rather, the statute prioritizes the Governor's emergency orders issued under the authority of ORS 401.165 to ORS 401.236, to the extent that state law is inconsistent. But if, and to the extent that that statement of priority might constitute a "suspension" of state law, we conclude that it is a suspension "by the authority of the legislature," through the legislature's enactment of ORS 401.192. There is no violation of Article I, section 22.

C. *Fifth Assignment of Error—Implication of ORS 471.333(3)*

ORS 471.333(3) provides:

"[The OLCC] may refuse to issue, cancel or suspend a license under ORS 471.313, 471.315 or 471.425 for maintaining an insanitary establishment in violation of ORS 447.010 to 447.156 and 447.992 or the laws, orders or rules relating to public health of the Oregon Health Authority or the State Department of Agriculture only when the agency charged with enforcing those laws, orders or rules finds that the licensee is in violation of them and renders a final order adverse to the licensee."

In its fifth assignment of error, petitioner contends that the OLCC violated ORS 471.333(3) by cancelling its license "for maintaining an insanitary establishment" in the absence of a final order from the OHA. However, the OLCC did not cancel petitioner's license for maintaining an insanitary establishment, but for violating OAR 845-006-0345(15) by failing to comply with EO 20-66. As we recently held in *JGB Enterprises, LLC*, 325 Or App at 352-53, a violation of OAR 845-006-0345(15) does not implicate ORS 471.333(3). We therefore rejected petitioner's contention.

### SUMMARY AND CONCLUSION

To summarize, the challenged OHS guidance does not lack validity because it was not incorporated in the text of EO 20-66, was not separately filed with the Secretary of State, and was not adopted by OHA as an administrative rule. ORS 401.192 does not violate provisions of the Oregon Constitution that prohibit the legislature's delegation of its authority to enact or suspend laws. The OLCC's order determining that petitioner violated OAR 845-006-0345(15) does not implicate ORS 471.333.

In conclusion, the OLCC did not err in determining that petitioner was in violation of OAR 845-006-0345(15) and imposing the sanction of cancellation of its liquor license.

Affirmed.